March 8, 1978

## 78-15   MEMORANDUM OPINION FOR THE GENERAL COUNSEL, CENTRAL INTELLIGENCE AGENCY

### Central Intelligence Agency—Investigative Authority—United States Citizens—*Weissman* v. *CIA*, (565 F. (2d) 692)

This responds to your request for our views on the Central Intelligence Agency's (CIA) proposed procedures regarding its investigations of United States persons in the United States. This informal discussion does not represent our final conclusions on this matter, but is meant to serve as a basis for future discussion. With the signing of Executive Order No. 12036, many of the issues touched upon by these procedures will, as you know, become the subject over the next few weeks and months of procedures promulgated under §§ 2-206, 2-207, and 2-208 of that order.[1] The questions to be considered in that process are among the most difficult arising under the order, and it is not our intention here to foreclose deliberation on any of those matters, but instead to give you the benefit of our preliminary thinking. On this basis, we believe the following issues raise problems in light of *Weissman* v. *CIA*, 565 F. (2d) 692 (D.C. Cir. 1977).

### I. Delineation of Individuals Subject to Investigation

In our view, the decision in *Weissman* did not wholly preclude investigation by the CIA of those Untied States persons who have a "connection" with the agency. Several of the categories of individuals included in paragraph [1] of your proposed procedures will have an obvious connection with the CIA, and we perceive few problems with the propriety of investigations in these cases. For example, employees of the agency, those who are detailed to the agency, those who apply for employment with the agency, or those who expressly

---

[1]Executive Order No. 12036, entitled *United States Intelligence Activities*, was issued by President Carter on January 24, 1978. *See* 14 *Weekly Compilation of Presidential Documents* 194 (January 30, 1978).

consent to an investigation (including employees of contractors) would meet this criterion rather easily.

However, the "connection" of other categories of personnel listed in paragraph [1] with the CIA is not so clear. Our principal concern is with those individuals who do not know that they are subject to a CIA investigation and who have no reason to believe that they may be investigated. In particular, this would refer to employees (or applicants for employment) of proprietaries and instrumentalities who are unaware of their employer's connections, including contractors' employees and others who have no reason to believe that the CIA may investigate them. Because these individuals have no such knowledge, their "connection" with the CIA must rest solely on the fact that they have become unwittingly involved in a situation where the CIA considers it necessary to subject them to some form of investigation. We believe this raises two different sorts of problems under *Weissman*. First, while we do not believe that the court made an individual's awareness of an investigation an "invariable prerequisite" to an inquiry by the CIA, the court was clearly troubled by an investigation of an American citizen "without his knowledge" or "security investigations of unwitting American citizens." 565 F. (2d) at 695, 696. In our view, this concern of the court may not legitimately be entirely ignored. Second, since the individuals here cannot be taken to have even implicitly consented to a background investigation, the requisite "connection" in such cases becomes more tenuous than where they were aware of, and consented to, such investigation.

But we do not believe that these problems will preclude investigations of such personnel. Rather, we wonder whether an approach along the lines suggested in our previous opinion on this matter would prove administratively feasible—*i.e.*, gearing the extensiveness and intrusiveness of the contemplated investigation to the degree that an individual has a "connection" with the CIA. More specifically, in cases in which an individual's connection is limited, the CIA might promulgate more restrictive procedures than are applicable to those individuals that the CIA directly employs. The restrictions contemplated would pertain to approval authority, duration of investigation, methods of investigation, disposition of records, etc.

## II. Purposes of Investigation

At present the proposed procedures do not state the purposes for which an investigation may be conducted. While we have no substantial objection to this open-ended approach with respect to Agency employees and others close to the Agency (provided that the purposes are lawful), we are troubled by its application to those who have less of a connection. With respect to such individuals, if the CIA is to justify an investigation by reference to some limited "connection," we believe that the regulations should clearly specify that the investigation will not go beyond whatever is required by reason of that connection. Otherwise, it might be claimed that the CIA is using a rather tenuous connection to justify an investigation serving other purposes. Such a departure from the investigation's underlying justification may be an abuse of

that aspect of *Weissman* allowing an investigation predicated upon a connection.

### III. Method of Investigation

The proposed procedures do not now specify which methods of investigation may be used, and we think that it is necessary in light of the order to delineate explicitly what methods will be used. Perhaps more importantly, paragraph [3] implies that physical surveillance may be used in some instances. While the order itself places limits on physical surveillance, additional restraints may be necessary to fulfill the Attorney General's responsibilities under § 3.305 of the order. *Weissman* suggests such limitations. For instance, the order permits physical surveillance of present employees of CIA contractors. If these individuals were unaware of the possibility of a CIA inquiry into their lives, we question whether their "connection" with the CIA would suffice to justify the intrusiveness of a physical surveillance.[2]

### IV. Paragraph [2]

The exception contained in paragraph [2] may be too broadly written. The provisions of paragraph [2A] appear to allow exactly the sort of investigation that occurred in *Weissman*, except that it would be limited in duration and subject to record disposal requirements. The provisions of paragraph [2B] would allow for an exception in all other areas, and hence provide for a way of avoiding the limitations of the proposed procedures entirely. There is no provision that either dictates the conditions under which this may occur or that limits the use of this broad exception. While a member of your staff has suggested that this provision could be modified to apply only to certain sorts of personnel, the open-ended nature of this approach would still trouble us. Its application to those with only tenuous connections with the CIA may, for the reasons discussed above, create problems under *Weissman*.

### V. Coordination With H.R. 7-1c(1)(g)

We suggest that more consideration be given as to how the proposed procedures are to fit in with H.R. 7-1c(1)(g). As the situation presently stands, the CIA will have two different sets of procedures dealing with the problems raised in *Weissman*. In our view, these two sets of procedures are somewhat inconsistent. For example, several provisions in the current regulations would appear to allow for investigations beyond those contemplated in your proposed procedures. *See, e.g.*, H.R. 7-1c(1)(g)(4) and (6). In order to prevent possible conflicts or confusion, it may be advisable to promulgate one set of guidelines to cover this entire area. Presumably, this will be done in formulating procedures under the order.

---

[2]The special concern about physical surveillance is one that was suggested by the *Weissman* court, as we pointed out in our earlier memorandum. *See* 565 F. (2d) at 695 n. 8.

## VI. Record Retention

Paragraph [2A] states that records of those investigated but not contacted will be disposed of in accordance with General Records Schedules. Because we are unfamiliar with these schedules, we cannot now comment on the efficacy of this provision. We assume, however, that this question and others will be included in the preparation of procedures under the order and, in that context, we would be pleased to provide whatever additional assistance we can.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*